HEARD APRIL TERM, 1871.

## NORTON vs. LEWIS.

The mere fact that a purchaser from the mortgagor of part of the mortgaged lands, has had actual possession, under his purchase, for a period of ten years after condition broken, is no bar, so far as the purchaser is concerned, to a bill against the mortgagor and purchaser for foreclosure and sale of the mortgaged premises. The doctrine of *Wright* vs. *Eaves*, 5 Rich. Eq., 81, re-affirmed.

It is no objection to a decree for foreclosure against the mortgagor and purchasers from him that several parcels purchased by different purchasers, at different times, are directed to be sold in the inverse order of the dates of the purchases.

BEFORE GREEN, J., AT SUMTER, APRIL TERM, 1871.

On May 20, 1854, William Lewis gave to Jabez Norton his bond, bearing that date, conditioned for the payment of $8,280, with interest, in five installments, the last of which fell due on January 1, 1859 ; and further to secure the payment of the said sum of money and interest, according to the terms of said bond, he gave to Norton his mortgage, bearing the same date, of a tract of 414 acres of land in the District (now County) of Sumter. The mortgage was duly recorded.

On May 26, 1855, a judgment by confession was entered on the bond by Norton against Lewis.

Lewis, at various times, made conveyances of parts of the mortgaged premises, as follows : He conveyed to J. R. Kendrick, on October 24, 1854, a lot of 12½ acres ; to H. B. Holliday, on April 14, 1855, a lot of 3 acres ; to Sarah Terry, on May 2, 1855, a lot of 6 acres ; and to J. L. Bartlett, on February 28, 1856, 189 acres.

On October —, 1856, J. D. Blanding became the purchaser, at Sheriff's sale, of Kendrick's lot. On October 20, 1857, he conveyed about 5 acres thereof to Elijah Pringle. Two other small parcels thereof he conveyed to different purchasers, and, a part remaining unsold, he made an agreement, in October, 1857, with J. P. Ard, to sell the same to him. Ard entered into possession, and continued in possession until the bill hereinafter mentioned was filed. Blanding was adjudged a bankrupt after the bill was filed, and D. J. Winn was appointed his assignee. Pringle conveyed away part of the lot he had purchased, but of the rest he retained the possession.

On August 1, 1855, H. B. Holliday conveyed his lot to W. M. Wilder, in trust for Susan Newman for life, and after her death for her children. She died living several children, one of whom, Hanson Newman, is a minor.

On January 6, 1861, Sarah Terry conveyed the lot she had purchased from Lewis to Esther Dinkins.

Bartlett made conveyances to different persons of portions, amounting in the whole to about 26 acres, of the 189 acres he had purchased. Among the persons to whom he conveyed was Thomas A. Pack, to whom, on July 26, 1860, he conveyed about 14 acres, in trust for Minerva Evans for life, with limitations over. The balance he retained.

Lewis made several payments on the bond, the latest of which was a payment of $500, on February 26, 1859, leaving a large balance due and unpaid.

On April 23, 1868, Norton filed this bill for foreclosure and sale of the mortgaged premises against Lewis, and some of the persons holding under him. The bill was afterwards amended, and persons holding portions of the mortgaged premises, whether immediately or mediately under Lewis, were made parties defendant.

The children of Susan Newman were absent from the State and were made parties by publication. For Hanson Newman, the minor, a guardian ad litem was appointed and a formal answer put in.

Lewis died, before the hearing, insolvent, and without any personal estate, and having no personal representative, the bill was revived against his heirs at law alone.

Bartlett and Pringle had been in the actual possession of the parcels purchased and retained by them for a period of ten years before the bill was filed, and Ard had also been in possession of the parcel he had bargained for. These defendants and Pack contested the plaintiffs' right of foreclosure and sale as against them, on the ground that the bill was barred by the statute of limitations.

So much of the decree of the Circuit Court as relates to the points on which the case was taken to this Court is as follows:

GREEN, J. The protection of the statute of limitations is claimed by some of the defendants, Elijah Pringle, Julius L. Bartlett, Thomas A. Pack, trustee, and James P. Ard. And besides these, one of those entitled in remainder to the parcel of the mortgaged premises conveyed by William Lewis to H. B. Holliday, and by him to W. M. Wilder, in trust for Susannah Newman during her life, and at her death to her children, (the said Susannah Newman being now dead) is a minor, and the Court will protect his rights, whatever they may be.

Before determining which, if any, of the defendants can be pro-

tected by the statute, I will consider the question whether a mortgagee can be barred by the possession during the statutory period, after condition broken, of a purchaser from the mortgagor of the mortgaged premises, or a part thereof, the mortgage having been duly recorded.

In the Courts of this State there have been three decisions upon this question, (*Nixon* vs. *Bynum*, 1 McC., 148; *Thayer* vs. *Cramer*, 1 McC. Ch., 395; *Smith and Cuttino* vs. *Osborne*, 1 Hill Ch., 340,) and the reasons given by the Court for disallowing the plea of the statute were, that by the Act of 1791 the legal estate remains in the mortgagor, who must therefore be held to be a trustee for the mortgagee; and as the trustee cannot plead the statute against his *cestui que trust*, neither can a purchaser from him with notice of the mortgage, who must be held to be a trustee also.

The expressions of opinion in *Wright* vs. *Eaves*, 5 Rich. Eq., 81, were simply founded on the earlier cases, and must stand or fall with them.

In all these cases there existed one of these conditions, which, according to the decisions in *Durand* vs. *Isaacs*, 4 McC., 54; *Stoney* vs. *Schultz*, 1 Hill Ch., 497, and *Mitchell* vs. *Bogan*, 11 Rich. Law, 686, rendered the Act of 1791, by its own provisions, inapplicable. The mortgagor was out of possession. But this fact with its consequences seems to have escaped the notice of the Court in the previous cases.

In the case of *Smith and Cuttino* vs. *Osborne*, the Court declares that under the Act of 1791, " as mortgagees, the legal estate in the lands never has been, and is not now, in the complainants or their intestates," and that " neither the plaintiffs or their intestates could have at any time heretofore made claim to these lands by an action at law." " How, then," it asks, "can it be said that the statute of limitations operates as a bar?" From this decision Harper, J., dissented.

In *Stoney* vs. *Schultz*, the same Judge (Johnson) uses the strongest terms to show that when a mortgagor is out of possession the Act of 1791 is inoperative, and the rights of the mortgagee must be determined according to the rules of the Common Law, by which (p. 491) " there is no question that the mortgagee was entitled to the possession of the land after condition broken, or might have maintained a possessory action against the mortgagor, or any one else in possession."

The inconsistency between these two decisions which were heard

by the same Judge, at an interval between them of only seven months, is inexplicable.

Until the decision in *Stoney* vs. *Schultz*, the Equity Court overlooked the proviso to the Act of 1791, and adjudicating those cases as if there had been no such proviso, refused to allow the plea of the statute of limitations.

In *Stoney* vs. *Schultz*, the main fact was the same as in the previous cases; the mortgagor had sold and the purchasers were in possession of various parcels of the mortgaged premises, and it was determined that the mortgagor was out of possession, and that the proviso rendered the Act of 1791 inapplicable.

*Thayer* vs. *Cramer*, and the kindred cases, were based solely on the Act of 1791, as if that Act had no proviso. No other reasons for the inapplicability of the statute of limitations are given than such as are deduced from that Act severed from the proviso.

But having, in their subsequent decisions, given construction to that proviso, and having held that the mortgagor being out of possession by a sale of the mortgaged premises, or of part thereof, to a purchaser who has entered, the condition existed which by the proviso rendered the Act of 1791 inapplicable, and therefore that the legal estate vests in the mortgagee, who can claim the rents and the profits (*Stoney* vs. *Schultz*, 1 Hill Ch., 500,) or bring his action of trespass to try title, (*Mitchell* vs. *Bogan*, 11 Rich., 686,) against a purchaser from the mortgagor who has entered under his purchase, (which doctrine has been recognized by the present Supreme Court in the case of *Williams* vs. *Beard*.)

It must be held that the case of *Nixon* vs. *Bynum*, *Thayer* vs. *Cramer*, *Smith and Cuttino* vs. *Osborne*, and *Wright* vs. *Eaves*, have ceased to be authority upon this point, because the premises and reasoning upon which they were based are untenable.

A purchaser from a mortgagor, after condition broken, who has entered under his purchase, is now held to be a trespasser. No fiduciary relations exist between them, and the mortgagee, the legal owner, can at once by his action at law evict such purchaser and recover the possession. He has a plain legal right entirely adequate for his protection. Having gained possession of the premises he can exercise his discretion as to his subsequent course, whether he shall hold the land until the rents and profits satisfy his debt, or whether he shall apply to have the purchaser's equity of redemption barred and foreclosed, and a sale of the property made.

Now, as the Court says, in *Thayer* vs. *Davidson*, Bail. Eq., 427, if the case be founded on a legal right, such an one as is generally enforcible at law, then the rule is the same in equity, although the party is compelled by some circumstance to come into equity for relief, and the statute will run from the accrual of the cause of action. The mortgagee has no personal claim against the purchaser for any part of the mortgage debt. All he can claim against such purchaser is the land and its proceeds, that they may be subjected to the mortgage. His remedy at law is ample. There is no reason for a mortgagee in possession coming into equity unless he is dissatisfied with the possession of the land in the stead of his money.

· I am at a loss to perceive any reason why the mortgagee should be protected, against such a purchaser, from the operation of the statute. His action of trespass to try title is barred at law by the adverse possession of the purchaser for ten years. A bill for foreclosure in this State is in effect a possessory action; that the rights which attach to the purchaser from the mortgagor may be vested in the purchaser at the sale for foreclosure, thus divesting the purchaser from the mortgagor of all his rights and evicting him from the land, for the Court will attach him if he does not surrender possession.

Why should not such a bill be also barred?

" When by reason of the mortgagor being out of possession, the legal estate is vested in the mortgagee, he can occupy no other or higher position than the mortgagee at common law. All the rights and equities which attach to the one, the other is entitled to, and no more."—*Williams* vs. *Beard.*

In *Drayton* vs. *Marshall*, Rice Eq., 373, a mortgagee, at common law, was held to be barred by the adverse possession for the statutory period of the heirs of the mortgagor. In that case it is said: · " It is believed that no case can be put, in which a man knows that another claims, and is in the enjoyment of, what belongs to him, and neglects to pursue his claims at law, where there is nothing to prevent his doing so, that he will not be barred by the statute."

I regard the case of *Drayton* vs. *Marshall*, therefore, as conclusive upon the point I have been discussing.

I must hold that the statute of limitations is a good and valid defence in behalf of Elijah Pringle and Julius L. Bartlett as to the parcels of the said mortgaged premises, described in their answers as still in their possession, and as having been possessed by them adversely for ten years before the filing of this bill.

Hanson Newman, one of the tenants in common, entitled to the parcel of land described in the pleadings as conveyed by William Lewis to Holliday, and by him to W. M. Wilder, trustee, is a minor. Though not pleaded by him, the statute is a protection to him, adverse possession of the parcel in which he is interested having been held under the deed to said W. M. Wilder, as trustee, for ten years.

Protection to him involves protection to his co-tenants.

Thomas A. Pack, trustee, and his *cestui que trust,* were not parties defendants to the original bill. They have been brought in by amendment. Possession had not been held by them for ten years at the filing of the original bill.

The statutory period was completed a few days before the filing of the amended bill.

Pack pleads the statute of limitations, but I cannot regard him as entitled to its benefit.

The original bill prayed for a sale of the whole of the mortgaged premises, and though he was not then made a party to it, yet I cannot think possession by him after the filing of that bill should be reckoned in computing the period of his adverse possession.

J. P. Ard alleges that he has been in possession of a parcel of the mortgaged premises, under an agreement to purchase from J. D. Blanding, for ten years, and claims the benefit of the statute. Ard had been in possession for ten years when J. D. Blanding became a bankrupt, and his estate vested in D. J. Winn, his assignee.

And I must hold that the plaintiff is barred as to this parcel of land.

Various of the defendants have the equity, that the parcels of land now subject to the lien of the mortgage, be sold in the inverse order of the sales by William Lewis, and by purchasers from him, for the satisfaction of the mortgage debt, and as the parcels held by Elijah Pringle, J. L. Bartlett, D. J. Winn, assignee, and by the remaindermen under the deed to W. M. Wilder, Trustee, are protected by the statute of limitations, and cannot be sold, those of the defendants respectively, who are entitled to have said last mentioned parcels applied to the mortgage debt before their own is so applied, are entitled as against themselves to have the mortgage credited with the value of any such parcel which but for the operation of the statute of limitations would be so previously sold and applied.

The parcels of the land which were conveyed by Lewis were liable to be sold and applied in the following order:

[Here follows a statement of the order.]

It is adjudged and decreed that so much of the bill as prays for the foreclosure and sale of the parcels of the mortgaged premises, which was conveyed to W. M. Wilder, Trustee, and of the parcels of land conveyed to J. L. Bartlett, and to Elijah Pringle, which have not been conveyed by them respectively, and of the lot of land now belonging to D. J. Winn, assignee, which has been in possession of J. P. Ard, be dismissed, and that the plaintiff pay the costs of E. Pringle, J. L. Bartlett, D. J. Winn and J. P. Ard.

And that it be referred to Charles Mayrant, Esq., as Referee to inquire and report the amount of the mortgage debt, and what amounts should be credited thereon for sales made under this case of part of the mortgaged premises, and for sales of other property of William Lewis, applicable to the plaintiff's judgment and execution at law.

That he also inquire and report what is the value of each of the parcels of the mortgaged premises now belonging to E. Pringle, J. L. Bartlett, D. J. Winn, assignee, and the remaindermen under the deed to W. M. Wilder, Trustee.

The plaintiff appealed to this Court on the grounds :

1. That the bill was not barred as against the defendants, Bartlett, Pringle, Ard and Wilder, by their possession for ten years.

2. That the Circuit Judge erred in directing the different parcels of land sold in a certain order. The order should have been to sell the whole as one parcel.

*Moise, Hamilton, J. S. G. Richardson,* for appellant.
*Haynsworth, Fraser,* contra.

Aug. 29, 1871.   The opinion of the Court was delivered by

WILLARD, A. J.   The question in the case is, whether a purchaser with notice, from a mortgagor, of part of the mortgaged land, can avail himself of the defence of having held the land for the period purchased by the statute of limitations.   The defendants who resort to this defence, do not allege anything in the character of their possession amounting to an active opposition to the claim of the mortgagee, but rely on the naked fact of holding as purchasers under title derived from the mortgagor.   The decree declares, that the possession of all the grantees "has been absolute and in accordance with their deeds, without any acknowledgment of the mortgage," except as to one of the grantees, as to whom there was a question of actual acknowledgment.

This conclusion of fact does not show a state of controversy, as to the defendants' possession, such as might, when commensurate with the statute period of limitation, establish adverse possession, as a proposition of fact.

The question is resolved into this : Does the naked fact of possession, for the statute period, of land bound by a mortgage, by a purchaser with notice, holding under a deed from the mortgagor, constitute a bar to foreclosure ? *Wright* vs. *Eaves*, 5 Rich. Eq., 81, distinctly decides that it does not. Chief Justice Dunkin, in that case, declares that such is the settled law of this State. It would be supposed that a declaration so clear and explicit, coming from a source so eminent and judicious, and sustained, not only by the judgment of the Court, but by the concurrence of all the Judges who heard the case, would have been regarded as finally decisive of this point.

The Circuit decree re-opened a controversy, maintained with much ability on both sides, but which appeared to have ended with *Mitchell* vs. *Bogan,* 11 Rich., 686.

In *Thayer* vs. *Cramer,* 1 McC. Ch., 395, Judge Nott unfortunately referred to the mortgagor in possession as a trustee for the mortgagee, and hence concluded that neither he nor his grantee could hold adversely to the mortgagee. Although that conclusion standing by itself would have led to the judgment pronounced by the Court, yet the opinion lays down a proposition more difficult to controvert, and leading to the same conclusion. He holds that as the mortgage was recorded, the purchaser must be regarded as having notice, and holding subject to the incumbrance. To sustain this last proposition it is not necessary to trace any of the elements of a trust in the relation of mortgagor and mortgagee. A mortgage of land is a legal lien, and the effect of such lien upon a purchaser with notice is a legal doctrine. There was no necessity for resorting to the peculiar ideas of equity, in order to solve the questions then before the Court.

Doubt has been thrown on the correctness of the reasoning in *Thayer* vs. *Cramer,* so far as the idea of a trust is involved. Such a doubt was expressed by Judge O'Neall in *Thayer* vs. *Davidson* (Bail. Eq., 412). But the legal doctrine advanced by *Thayer* vs. *Cramer* stands supported by numerous cases, and is as well supported as the concurring opinion of able Judges and an unbroken line of judicial determination can support it.

The decree regards the authority of *Wright* vs. *Eaves* as prejudicially affected by its relation to *Thayer* vs. *Cramer,* and the cases

following that, and considers that it must stand or fall with them. We find it much more difficult than this would imply, to get rid of the deliberate judgment of the Court of highest authority. To show that the reasoning on which a judgment has been placed is defective, is not always enough to unsettle the authority of such judgment. The question in such case is whether there is any valid reasoning to support it. But it is going much too far to say that because an early case advanced an untenable reason for its judgment, that a subsequent judgment, following the authority of the former, without giving express sanction to the defective reasoning, must be regarded as resting upon such error.

*Drayton* vs. *Marshall* (Rice Eq., 373,) is not at variance with the foregoing. That case holds, that when there is an actual denial of the right of the mortgagee, manifested by acts of opposition to such right, commensurate with the period prescribed by the statute of limitations, there is an adverse possession, in the legal sense, such as to bar the mortgagee's right. That case is distinguishable from the present, as here it is sought to make out the adverse possession from the naked fact of the possession of the land, while in that case there was a real and active controversy between the parties, based on an actual conflict of claims, and maintained by acts on the part of the purchaser characterizing his possession as irreconcilable with the mortgagee's claim of right.

The Act of 1791, (5 Stat., 170,) has no bearing on the present question. The practical effect of that Act was to leave in the mortgagor in possession, an estate determinable on the contingency of his relinquishing possession. On the happening of such contingency the statute estate was gone, and the parties stood on their rights as existing previous to the statute.— *Williams* vs. *Beard*, 1 S. C., 309.

The fact that the mortgagor retained possession of part of the mortgaged premises is unimportant. So much of the mortgaged premises, the possession of which was transferred by the mortgagor to a stranger to the mortgagee, passed from under the operation of the statute. We are not called upon at the present time to determine whether the alienation by the mortgagor of part of the mortgaged premises takes the whole mortgaged land out of the operation of the statute.

In all these cases where the rights of a purchaser, in possession, were considered, the question was, necessarily, outside of the statute, for the fact of possession being in a purchaser evidenced its

being out of the mortgagor.—*Stoney* vs. *Shultz,* 1 Hill Ch., 465; *Smith* vs. *Osborne,* 1 Ib., 540.

That portion of the decree that orders that the mortgaged premises be sold in the inverse order of the sales made by the mortgagor is not subject to objection. The mortgagor secures the application of the entire proceeds of the mortgaged land, or so much as may be necessary, for the payment of the mortgage debt, while the order of sale satisfies the equities as among the purchasers.

The decree, so far as it adjudges that the claim of the mortgagee to a sale of the mortgaged premises is barred by the possession of the defendants of the land mortgaged, must be set aside, and the complainant is entitled to the usual decree for the sale of the mortgaged premises.

The causes will be remanded to the Circuit Court for a decree of foreclosure in conformity with the foregoing determinations.

*Moses,* C. J., and *Wright,* A. J., concurred.